IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

PLAINTIFF,

Vs.                                                      No. 05-40066-01-SAC

DAVID LEE HOLMES II,

DEFENDANT.

MEMORANDUM AND ORDER

This case comes before the court on three motions filed by defendant:  motion to compel discovery regarding informant (Dk. 21); motion to suppress evidence and statements (Dk. 22); and motion to suppress evidence seized from cellular phones (Dk. 23).  The government filed a consolidated response (Dk. 29) opposing the motions.  At the hearing, the government announced that it no longer opposed the defendant's motion to suppress the evidence seized from cellular phones and further asked the court to grant the defendant's motion.  The court, therefore, grants the defendant's motion to suppress (Dk. 23) based on the agreement of the parties.  The government presented the testimony of Doug Garman, a Narcotics Investigator with the Topeka Police

Department.  After hearing this evidence and counsel's arguments and
researching the issues, the court is ready to rule.

**Indictment**

The single-count indictment charges that on April 13, 2005, the
defendant possessed with the intent to distribute 23.33 grams of cocaine
base.

**Summary of Facts**

Narcotics Investigator Doug Garman with the Topeka Police
Department testified that he frequently uses confidential informants in the
investigation of drug offenses.  Assessing the reliability of an informant is
important in Garman's work.  He explained the different steps taken and
the factors evaluated in determining an informant's reliability.  He
investigates the informant's criminal history looking for crimes of dishonesty
or prior false statements.  He conducts an initial interview to learn what the
informant knows and understands about the relevant local drug distribution
network and then assesses whether these disclosures comport with law
enforcement's general understanding of the network based on prior and
ongoing investigations.  If the informant clears these hurdles, officers will
use the informant in controlled settings to judge the informant's reliability in

providing truthful information and in following officers' directions.  For example, the informant will make one or more controlled purchases which are either recorded or subjected to other surveillance.  The officers then debrief the informant and judge whether the informant has truthfully disclosed the details as confirmed by a recording or surveillance.

On April 13, 2005, Officer Garman had contact with an informant who described the defendant David Lee Holmes as being in possession of cocaine base.  Officer Garman had been working with this informant since February 2005 and considered the informant to be reliable based on the following circumstances.  A check of the national record systems revealed no prior criminal convictions on the informant.  The informant was facing some criminal charges and was cooperating because of the charges.  In his interviews, the informant provided names, residences, cars, sources, and drug trafficking details in Topeka.  This information was consistent with the department's understanding of the drug distribution network in Topeka.  The informant identified seven different persons as involved in the distribution of drugs in Topeka, and this information was corroborated through other sources, including different informants, law enforcement intelligence, common knowledge in the

3

department, and other ongoing investigations.  The informant then supplied information leading to the issuance of a search warrant for controlled substances.  During the execution of the warrant, officers found drugs in the specific locations previously described by the informant.  The informant had made four successful controlled purchases of drugs and provided truthful information during the debriefings on each purchase.  The informant attempted another controlled purchase which was not completed. Garman said the informant was not to blame for unsuccessful attempt and explained that the informant's conduct in not forcing the situation bolstered Garman's opinion about the informant's reliability.  Garman testified that the informant listened to the officers' instructions given and did "extremely well" in following them.  Based on these factors and his experience in using the informant for the last two months, Garman believed the informant was reliable and dependable and considered the informant's degree of reliability to be "extremely high."

        The informant telephoned Garman and reported that a black male named David possessed approximately one ounce of crack cocaine that was being carried in a pocket of his pants.  The informant described David as wearing black clothing and a black ball cap with red on it.  The

4

informant gave the location of David and said that David would be leaving this residence in an older model, four-door tan Chevy Caprice.  The informant said David would be driving the car and a passenger with him would be a black male named "Dre-Dre."  Garman testified the informant's basis of knowledge was personal observation.

Garman drove by the location given by the informant and observed a tan Chevy Caprice parked outside of it.  He ran the license plate on the car and learned it was registered to a Marla Hernandez. Garman knew Ms. Hernandez had been involved in the distribution of drugs, and he had participated in an undercover controlled purchase of cocaine from Ms. Hernandez.

Garman set up surveillance on the location where the car was parked and telephoned the informant.  Garman asked the informant to drive by the location and confirm that the parked car was the one being used by the suspect.  While the informant was driving by the location, he spoke with Garman by telephone and identified the two black males leaving the house as David and Dre-Dre.  From his surveillance point, Garman also saw the same two black males leaving the house that the informant was identifying.  The informant's earlier description of David, his clothing, his

5

passenger and his car matched what Garman was seeing.

Garman began following the tan car which the defendant David Holmes was driving.  Garman called Officer Youse who was assigned a marked unit to conduct the traffic stop.  As Officer Youse began to signal for the stop, the suspects turned into the parking lot of a fast food restaurant.  The informant did not tell Garman that the suspects were carrying weapons. Garman, however, had reason to be concerned about weapons as he had been told that the suspect David was carrying an ounce of cocaine base. From his training and experience, Garman considered a person having an ounce of cocaine base in Topeka to be a middle or upper level distributor of cocaine base.  Garman also testified that drug distributors, particularly cocaine base dealers in Topeka, frequently used weapons to protect their assets and to collect debts.

As he approached the parked car on foot, Garman observed the driver and passenger look surprised to see the officers walking toward them.  The defendant driver then immediately turned his gaze toward the middle of the seat and appeared to reach toward the right side of his waist. Based on his prior experience, including that as an undercover agent, Garman knew dealers frequently carried drugs and weapons in their

6

waistbands.  Consequently, the defendant's movements raised concerns that either a weapon was being accessed or contraband was being concealed.  Using a loud, stern voice, Garman immediately commanded the defendant and passenger to show their hands.  When neither one complied with the request and the passenger also turned toward the center and reached for his waist area, Garman pulled his weapon and repeated his command to show their hands.  Both complied with this last request.

Following Garman's orders, Holmes exited the car and stepped away from it where he was handcuffed behind his back.  Concerned for weapons, Garman did a pat-down search of the defendant beginning with the waistband area.  As he patted the outside of the defendant's front pants pocket, Garman felt what from experience he believed was a small plastic bag of marijuana.  He reached into the pocket and retrieved a plastic bag containing vegetation that resembled marijuana.  He then searched the defendant's person, finding individual packages of cocaine base in the brim of the defendant's waist and inside the defendant's pants near the groan area.  Officers then searched the car finding additional cocaine and a pistol with a loaded magazine in a gym bag on the back seat.

**Motion to Compel Discovery Regarding Informant**

Defendant's motion for discovery seeks eight categories of information relating to the informant.  Citing *Roviaro v. United States*, 353 U.S. 53 (1956), the defendant argues the informant's identity and related information is relevant, helpful, and essential to a fair determination of his challenge to the lawfulness of the officer's actions in searching his person and car.  The defendant considers the requested information as essential in determining the informant's credibility and reliability which are issues raised in his motion to suppress.  The defendant similarly argues it is important for him to have the opportunity to interview the informant prior to the court's decision on the suppression motion and to have access to the requested information to ensure a fair trial.  The defendant does not assert the informant was present at the later traffic stop or that the informant would have observed other matters relevant to any defense he could assert at trial to this drug trafficking charge.

The Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 59 (1957), recognized the compelling public interest in favor of effective law enforcement and created a privilege that permits the government to withhold the identity of informants.  *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000 (10th Cir. 1992).  Though anonymity encourages and

8

protects informants, the Supreme Court held that the privilege yields to fairness if the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  *Roviaro*, 353 U.S. at 60-61.  A decision on disclosure of identity entails "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense."  353 U.S. at 62.  Striking a proper balance depends on "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."  *Id.*

The burden is on the defendant to come forward with evidence establishing that the *Roviaro* criteria favor disclosure.  United States v. Blevins, 960 F.2d 1252, 1258-59 (4th Cir.1992).  "'Mere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure.'"  *United States v.  Mathis,* 357 F.3d 1200, 1208 (10th Cir. 2004) (quoting *United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993)).  Generally, the Tenth Circuit requires disclosure when the informant's testimony "might be relevant to the defendant's case and justice would best be served by disclosure."  *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986).  In practice, the Tenth Circuit has not required

disclosure "where the information sought 'would be merely cumulative,' or where the informer did not participate in the illegal transaction," *Mendoza-Salgado*, 964 F.2d at 1001 (quoting *United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987)) (other citations omitted), where the informant is not a participant or witness to the crime, *United States v. Brantley*, 986 F.2d at 383, or where the informant is a mere tipster, *United States v. Wynne*, 993 F.2d 760, 766 (10th Cir. 1993).

The defendant has not shown the identify of the informant would be relevant and essential to his defense in the suppression hearing and at trial.  Apparently, the defendant seeks to learn the informant's identity in the bare hope of finding some error in Garman's testimony about the informant's reliability or some conflict between Garman's account of what the informant told him and what the informant remembers telling him. The *Roviaro* balance tips against disclosure when the defendant can offer nothing but the mere hope of finding some relevance.  For example, the rule in the Tenth Circuit is that "[t]o obtain disclosure of a confidential informant referred to in a search warrant affidavit, 'the defendant must make a substantial showing that the affiants knowingly made false statements, or made statements with reckless disregard for the truth.'"

10

*United States v. Hogan*, 933 F. Supp. 1008, 1015 (D. Kan. 1996) (quoting

*United States v. Hernandez*, 829 F.2d 988, 992 (10th Cir.1987), *cert.*

*denied*, 485 U.S. 1013 (1988).  The Supreme Court similarly has upheld

the informant's privilege when the informant's involvement was limited to

the probable cause issue and the informant's testimony was not needed in

light of the officer's testimony on the same issues. *See United States v.*

*Barker*, 623 F. Supp. 823, 836 (D. Colo.1985) (citing *McCray v. Illinois*, 386

U.S. 300 (1967)).

In *McCray*, the Supreme Court held:

> There can be no doubt, upon the basis of the circumstances related
> by Officers Jackson and Arnold, that there was probable cause to
> sustain the arrest and incidental search in this case. *Draper v. United*
> *States*, 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327. Unlike the
> situation in *Beck v. State of Ohio*, 379 U.S. 89, 85 S. Ct. 223, 13 L.
> Ed. 2d 142, each of the officers in this case described with specificity
> 'what the informer actually said, and why the officer thought the
> information was credible.' 379 U.S., at 97, 85 S. Ct., at 229. The
> testimony of each of the officers informed the court of the 'underlying
> circumstances from which the informant concluded that the narcotics
> were where he claimed they were, and some of the underlying
> circumstances from which the officer concluded that the informant . . .
> was 'credible' or his information 'reliable.'' *Aguilar v. State of Texas*,
> 378 U.S. 108, 114, 84 S. Ct. 1509, 1514, 12 L. Ed. 2d 723. See
> *United States v. Ventresca*, 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d
> 684. Upon the basis of those circumstances, along with the officers'
> personal observations of the petitioner, the court was fully justified in
> holding that at the time the officers made the arrest 'the facts and
> circumstances within their knowledge and of which they had
> reasonably trustworthy information were sufficient to warrant a

11

> prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar v. United States*, 338 U.S. 160, 175-176, 69 S. Ct. 1302, 1310-1311, 93 L. Ed. 1879; *Henry v. United States*, 361 U.S. 98, 102, 80 S. Ct. 168, 171, 4 L. Ed. 2d 134,' *305 *Beck v. State of Ohio, supra*, 379 U.S. at 91, 85 S. Ct. at 225. It is the petitioner's claim, however, that even though the officers' sworn testimony fully supported a finding of probable cause for the arrest and search, the state court nonetheless violated the Constitution when it sustained objections to the petitioner's questions as to the identity of the informant. We cannot agree.

*McCray v. Illinois*, 386 U.S. at 304-305.  The Supreme Court distinguished

*Roviaro* as addressing the privilege in the setting of a trial with the critical

issue of the defendant's guilt as opposed to a preliminary hearing with only

the issue of probable cause.  *Id.* at 309.  The Court made it clear that the

informant's privilege does not yield to a due process argument based on

nothing more than speculation that the officers lied about the informant.

"Nothing in the Due Process Clause of the Fourteenth Amendment requires

a state court judge in every such hearing to assume the arresting officers

are committing perjury."  *Id.* at 313.  Thus, "although the Due Process

Clause has been held to require the Government to disclose the identity of

an informant at trial, provided the identity is shown to be relevant and

helpful to the defense, *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957),

it has never been held to require the disclosure of an informant's identity at

a suppression hearing.  *McCray v. Illinois*, 386 U.S. 300 (1967)." *United*

12

*States v. Raddatz*, 447 U.S. 667, 679 (1980).

Investigator Garman testified to being particularly concerned for the safety of the informant in this case.  He explained that his report was written to withhold details about the informant's basis of knowledge in order to protect the informant's identity.  When officers searched the car being driven by the defendant, they found an Uzi-style pistol with a loaded magazine stowed in a gym bag on the back seat.  The government has articulated reasons for withholding the informant's identity and consistently has taken steps to preserve it.  The presence of a loaded firearm at the crime scene is some evidence confirming the reasons for concern.

Investigator Garmin testified with specificity as to what the informant had told him and why he considered the informant credible.  He further described what measures he personally took to assess the reliability of the particular information.  On these facts and circumstances, Investigator Garman was justified in treating the informant's statement and his visual confirmation of certain details as reasonably trustworthy information.  The defendant points to no serious omissions or concerns with Garman's testimony about the informant as to even warrant an *in camera* hearing.  Finding that the defendant has not carried his burden of

proving the necessity of disclosure, the court denies the defendant's motion.

## Motion to Suppress Evidence and Statements (Dk. 22)

The defendant challenges both the initial stop and the subsequent searches of his person and car as unlawful.  With regard to the stop, the defendant denies that Garman had a sufficient basis to treat the informant as reliable.  The defendant contends that Garman lacked a reasonable belief of risk or danger to justify handcuffing him as part of the traffic stop and, alternatively, that Garman lacked probable cause to arrest and handcuff him.  The defendant challenges the pat-down search as unjustified, for the officers were without information that he was armed or dangerous and the furtive movements of the defendant and the passenger are not enough.  Thus, the officer exceeded his lawful authority for an investigative detention and lacked probable cause to proceed with the actions taken.  Finally, the defendant seeks to suppress his statements subsequently made as following on the heels of an illegal search and seizure.

The government argues the informant's tip provided reasonable suspicion to justify the initial stop and investigative detention and,

alternatively, contends the same tip along with the officers' independent partial corroboration of it provided probable cause to arrest the defendant. The government insists the officers' use of handcuffs and pat-down search was justified under the circumstances.

<u>Initial Stop</u>

An officer conducting a traffic stop must point to "specific and articulable facts and rational inferences drawn from those facts" that give rise to a reasonable suspicion of criminal activity. *United States v. Fernandez*, 18 F.3d 874, 878 (10th Cir. 1994) (quotation omitted). Reasonable suspicion requires the officer to act on "something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7, (1989) (internal quotation marks omitted). Reasonable suspicion of criminal activity is a "likelihood of criminal activity . . . that need not rise to the level required for probable cause, and . . . falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (quotations and citations omitted); *see United States v. Hauk*, 412 F.3d 1179, 1185-89 (10th Cir. 2005) ("Reasonable suspicion may be established by information that is different in quantity or content and less reliable than the information

15

required to establish probable cause." (internal quotations and citations omitted)).  Courts are to view reasonable suspicion as a "fluid concept[]" which finds its substance in the particular settings under question.  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).  Even conduct that is wholly innocent may sustain a finding of reasonable suspicion in some circumstances. *Sokolow*, 490 U.S. at 9-10.  Indeed, "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."  *United States v. Arvizu*, 534 U.S. at 277.

The burden rests with the government to prove the reasonableness of the officer's suspicion.  *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998).  "A variety of factors may contribute to the formation of an objectively reasonable suspicion of illegal activity." *United States v. Hunnicutt*, 135 F.3d at 1349.  "The law does not specify a minimum of factors necessary to constitute reasonable suspicion."  *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (citation omitted).  Arriving at reasonable suspicion is a process dealing with probabilities, not hard certainties, "'as understood by those versed in the field of law enforcement.'"  *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).  Instead of closing their

16

eyes to suspicious circumstances, officers may call on their own experience and training to judge facts and even "perceive meaning in actions that appear innocuous to the untrained observer." *United States v. Gutierrez-Daniez*, 131 F.3d at 942 (citation omitted).

In evaluating a claim of reasonable suspicion, the court assesses the totality of the circumstances, avoids pigeonholing facts as suspicious or not, and "gives deference to a trained law enforcement officer's ability[1] to distinguish between innocent and suspicious circumstances." *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997). In other words, courts "may not evaluate and reject each factor in isolation." *United States v. Gandara-Salinas*, 327 F.3d 1127, 1130 (10th Cir. 2003). "A confidential tip may justify an investigatory stop if under the totality of the circumstances the tip furnishes both sufficient indicia of reliability and sufficient information to provide reasonable suspicion that criminal conduct is, has, or is about to occur." *United States v. Leos-Quijada*, 107 F.3d 786, 792 (10th Cir. 1997) (citations omitted).

---

[1]Indeed, courts are "to accord deference to the officer's ability to draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to him that might well elude an untrained person." *United States v. Johnson*, 364 F.3d 1185, 1193 (10th Cir. 2004) (citations and internal quotations omitted).

17

Under the reliability prong, the court considers "the credibility or veracity of the informant's knowledge, the basis of the informant's knowledge, and the extent to which the police are able independently to verify the reliability of the tip." *Id.* (citations omitted).  Investigator Garman testified at length on the informant's reliability as demonstrated in his earlier disclosures of information, his involvement in controlled purchases of drugs and subsequent debriefings, and his detailed information used to secure an earlier search warrant that led to the discovery of drugs.  The informant provided information that was specific and detailed with regard to the kind of drugs involved, the names and descriptions of those involved, the location of the suspects, and the car that was being driven.  Investigator Garman conducted surveillance that corroborated what the informant had disclosed about location and description of the suspects and their car.  At Garman's request, the informant came to the location and confirmed the identity of the suspects and their vehicle while Garman was also watching the location.  Garman also determined the car being driven by the defendant was registered to a person whom he personally knew was involved in the distribution of drugs.

Under the content prong, the informant told the officer that the

18

defendant was in the drug trafficking business and currently possessed one ounce of crack cocaine. Investigator Garman understood that the informant was speaking from personal knowledge or observation of the suspects. The corroborating matches between the detailed information provided and the officer's subsequent observations sufficiently bolsters the tip. Under the totality of the circumstances, the informant's tip gave reasonable suspicion to make an investigative detention.

Use of Handcuffs and Pat-down Search

"The allowable scope of an investigative detention cannot be determined by reference to a bright-line rule." *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002). "[C]ommon sense and ordinary human experience must govern over rigid criteria." *Id.* The Tenth Circuit has recognized that "'[a] law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists.'" *United States v. Carter*, 360 F.3d 1235, 1240 (10th Cir. 2004) (quoting *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993)). To put it another way, though not every investigative detention warrants handcuffs, "a *Terry* stop does not become

19

unreasonable just because police officers use handcuffs on a subject or place him on the ground." *United States v. Neff*, 300 F.3d at 1220.  The use of handcuffs is proper if there is "a reasonable, articulable ground for fearing danger from the suspects." *Id.* at 1221; *see Carter*, 360 F.3d at 1240.

Another safety measure officers can take to secure their safety and maintain the status quo is a pat-down search for weapons.  *United States v. Garcia*, 459 F.3d 1059, 1063 (10th Cir. 2006).  A pat-down constitutes a Fourth Amendment search.  *Id.*  "The purpose of the limited pat-down search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence." *Id.* (quotations and citations omitted).  Rather than a regular part of investigative detentions, pat-downs are reserved for when "the facts available to the officer would warrant a man of reasonable caution to believe that a frisk would be necessary to protect himself." *United States v. Manjarrez*, 348 F.3d 881, 886 (10th Cir. 2003), *cert. denied*, 541 U.S. 911 (2004).

"[A]n individual's involvement with drug transactions or distribution can support reasonable suspicion to frisk that individual for weapons. *Garcia*, 459 F.3d at 1064 (citing *United States v. Hishaw*, 235

F.3d 565,570-71 (10th Cir. 2000) (and case cited therein including, *United States v. Perrin*, 45 F.3d 869, 873 (4th Cir. 1995) ("[I]t is certainly reasonable for an officer to  believe that a person engaged in the selling of crack cocaine may be carrying a weapon for protection."), *cert. denied*, 515 U.S. 1126 (1995)), *cert. denied*, 533 U.S. 908 (2001)) ; *see also United States v. Johnson*, 364 F.3d 1185, 1194-95 (10th Cir. 2004) (Drug dealing is a crime "typically associated with some sort of weapon."); *United States v. Bustos-Torres*, 396 F.3d 935, 943 (8th Cir. 2005) ("Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction."), *cert. denied*, 545 U.S. 1109 (2005).

Based on the reliable tip that the suspect was in possession of larger amount of crack cocaine indicative of drug dealing, Investigator Garman reasonably believed the defendant may be in possession of a weapon.  Courts have recognized furtive and evasive gestures to be an additional factor in proof of reasonable suspicion.  *See United States v. Carter*, 360 F.3d at 1240 (evasive action taken in response to the officer's presence); *United States v. Ridley*, 1998 WL 778381 (10th Cir. 1998)

21

(furtive movements support a finding of reasonable suspicion).  The similar furtive movements of both the driver and passenger in reaching around their waists as the officer approached their stopped car escalate an officer's reasonable concern for his safety and that of others.  Weapons frequently are carried or hidden in the waistbands, the same area where both suspects were seen reaching.  Upon seeing these furtive gestures, Investigator Garman showed his immediate concern for safety by shouting at the suspects to show him their hands.  Considering the number of suspects, their similar furtive gestures, their delayed response in complying with Garman's requests and their suspected drug dealing, Garman reasonably and appropriately handcuffed the defendant and conducted a pat-down for weapons.

During the pat-down search of the defendant's outer clothing, Garman felt what he believed from training and experience was a small plastic bag of marijuana.  Garman then reached into the defendant's front pocket and seized the plastic bag that appeared to contain marijuana.  In *Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993), the Supreme Court upheld such a seizure by analogy to the plain-view doctrine:

> If a police officer lawfully pats down a suspect's outer clothing and
> feels an object whose contour or mass makes its identity immediately

> apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.*  "The Supreme Court concluded that a "plain feel" exception to the warrant requirement would justify the seizure of contraband detected during a pat down because the officer knew the nature of the item."  *United States v. Thomson*, 354 F.3d 1197, 1200 (10th Cir. 2003) (footnote omitted), *cert. denied*, 541 U.S. 1081 (2004).  Thus, upon detecting the plastic bag of marijuana during the pat-down search, Investigator Garman lawfully reached into the defendant's pocket and seized it.

In light of the above findings and analysis, the court deems it unnecessary to consider at this time the government's alternative arguments for denying the defendant's motion to suppress.

IT IS THEREFORE ORDERED that the defendant's motion to compel discovery regarding informant (Dk. 21) and motion to suppress evidence and statements (Dk. 22) are denied;

IT IS FURTHER ORDERED that the defendant's motion to suppress evidence seized from cellular phones (Dk. 23) is granted on the agreement of the parties.

23

Dated this 2nd day of April, 2007, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge